1
2
3
4
5
6
7
8

9                    **IN THE UNITED STATES DISTRICT COURT**

10                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12   VIDAL A. RENDON,                          CASE NO. CV F 09-1584 LJO DLB

13                    Plaintiff,               **ORDER ON DEFENDANT'S F.R.Civ.P. 12**
                                               **MOTION TO DISMISS**
14          vs.                                (Doc. 5.)

15   COUNTRYWIDE HOME
     LOANS, INC.,
16
                    Defendant.
17   _____/

18                              **INTRODUCTION**

19          Defendant Countrywide Home Loans, Inc. ("Countrywide") seeks to dismiss as meritless and

20   time barred pro se plaintiff Vidal A. Rendon's ("Mr. Rendon's") eight claims arising from loans, default

21   and foreclosure on mortgages on Mr. Rendon's Porteville property ("property"). Like many before him,

22   Mr. Rendon relies on unsupported factual and legal claims which this and other Courts have rejected and

23   continue to reject routinely. This Court addresses sua sponte F.R.Civ.P. 12(b)(6) dismissal of Mr.

24   Rendon's claims on the record and VACATES the October 22, 2009 hearing set by Countrywide. For

25   the reasons discussed below, this Court DISMISSES this action.

26                              **BACKGROUND**

27                          **Mr. Rendon's Loans And Default**

28          On October 5, 2006, Mr. Rendon borrowed $132,000 ("first loan") from Countrywide secured

                                              1

by a deed of trust ("first DOT") on the property.[1]  Also on October 5, 2006, Mr. Rendon borrowed $18,000 ("second loan") from Countrywide Bank, N.A. ("Countrywide Bank"), and secured by a deed of trust ("second DOT") on the property.  Countrywide Bank is not a defendant.

On February 22, 2007, Mr. Rendon borrowed $43,000 ("refinanced second loan") from Countrywide Bank and secured by a deed of trust ("third DOT") on the property.

On March 31, 2007, a Substitution of Trustee and Full Reconveyance of the second loan was recorded.

After Mr. Rendon failed to make payments, a notice of default of the first loan was recorded on December 30, 2008.  A notice of trustee's sale was recorded on April 6, 2009.

### Mr. Rendon's Claims

On May 4, 2009, Mr. Rendon filed his complaint ("complaint") in Tulare County Superior Court prior to Countrywide's removal to this Court.  The complaint alleges that "defendants":

1.  "[D]id not explain the working of the interest rate, how it is computed or its inherent volatility or interest only note";

2.  "[C]harged and obtained improper fees for the placement of their [sic] loan as 'sub-prime' when he qualified for a prime rate mortgage which would have generated less in fees and interest"; and

3.  "[W]ithout his knowledge, by some means may have transferred from or by Defendant either completely or by association or other means to another Defendant unknown to Plaintiff."

The complaint alleges eight claims which this Court will address below and seeks rescission of the first loan, declaratory and injunctive relief, compensatory, statutory and punitive damages, and attorney fees.

### DISCUSSION

### F.R.Civ.P. 12(b)(6) Standards

Countrywide attacks the complaint's claims as "devoid of merit," lacking supporting facts, and

---

[1]  All documents pertaining to Mr. Rendon's loans and default were recorded with the Tulare County Official Records.

2

1   barred by limitations periods and Mr. Rendon's "failure to allege an ability to tender the reinstatement

2   amounts due under his loans."

3       "A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal

4   may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service,*

5   *Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981).  Sua

6   sponte dismissal may be made before process is served on defendants.  *Neitzke v. Williams*, 490 U.S.

7   319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*,

8   745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte

9   prior to service of process on defendants).

10      A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

11  forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

12  of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

13  whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

14  support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

15  *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

16  there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

17  cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

18  *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

19      In resolving a F.R.Civ.P. 12(b)(6) motion, the court must:  (1) construe the complaint in the light

20  most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

21  whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

22  *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is "free to ignore legal

23  conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in

24  the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th

25  Cir. 2003) (citation omitted).  A court need not permit an attempt to amend a complaint if "it determines

26  that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc.*

27  *v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  "While a complaint attacked by a

28  Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

3

1   provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

2   formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550

3   U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss

4   any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently

5   all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629,

6   634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations

7   respecting all the material elements necessary to sustain recovery under some viable legal theory."

8   *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d

9   1101, 1106 (7th Cir. 1984)).

10      In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

11   explained:

12           To survive a motion to dismiss, a complaint must contain sufficient factual
          matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A
13        claim has facial plausibility when the plaintiff pleads factual content that allows the court
          to draw the reasonable inference that the defendant is liable for the misconduct alleged.

14

15           . . . Threadbare recitals of the elements of a cause of action, supported by mere
16        conclusory statements, do not suffice.  (Citation omitted.)

17      Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss.

18   *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts,*

19   *Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).  A

20   F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is

21   apparent on the complaint's face.  *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear

22   on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may

23   be raised by a motion to dismiss accompanied by affidavits.  *Jablon*, 614 F.2d at 682; *Rauch v. Day and*

24   *Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

25      For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the

26   complaint.  *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).

27   Nonetheless, a court may consider exhibits submitted with the complaint.  *Van Winkle*, 290 F.Supp.2d

28   at 1162, n. 2.  In addition, a "court may consider evidence on which the complaint 'necessarily relies'

if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). A court properly may "'take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted). As such, this Court may consider plaintiffs' pertinent loan and foreclosure documents.

**TILA Rescission**

The complaint's first claim appears to attempt to allege violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., to warrant rescission of Mr. Rendon's loan. The TILA claim alleges TILA violations of:

1.    Refusal "to validate or otherwise make full accounting and the required disclosures as to the true finance charges and fees";

2.    Improper retention of Mr. Rendon's funds; and

3.    Failure "to disclose the status of the ownership of the loans."

The TILA claim seeks "rescission or cancellation of the loan herein and return of all funds received by

---

[2]    "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

1  Defendants from Plaintiff."

2  ***Tender Of Amount Due***

3       TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without

4  penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal*

5  *Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a).  TILA rescission may be

6  extended up to three years if a lender fails to comply with TILA disclosure requirements.  *Semar*, 791

7  F.2d at 701-702; 15 U.S.C. § 1635.

8       Countrywide notes that to seek TILA rescission, a plaintiff must return to the lender the

9  "rescission balance" which is the mortgage loan's principal less all interest and fees paid to the lender

10  and third parties at closing and fees paid to the creditor after closing.  Countrywide faults the complaint's

11  absence of allegations that Mr. Rendon tendered the rescission balance to Countrywide or that Mr.

12  Rendon is financially able to do so.  The "voiding of a security interest may be judicially conditioned

13  on debtor's tender of amount due under the loan."  *American Mortgage Network, Inc. v. Shelton*, 486

14  F.3d 815, 821 (4th Cir. 2007).

15       15 U.S.C. § 1635(b) governs the return of money or property when a borrower exercises the right

16  to rescind:

17       . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the
        obligor any money or property given as earnest money, downpayment, or otherwise, and
18       shall take any action necessary or appropriate to reflect the termination of any security
        interest created under the transaction. If the creditor has delivered any property to the
19       obligor, the obligor may retain possession of it. Upon the performance of the creditor's
        obligations under this section, the obligor shall tender the property to the creditor, except
20       that if return of the property in kind would be impracticable or inequitable, the obligor
        shall tender its reasonable value. Tender shall be made at the location of the property or
21       at the residence of the obligor, at the option of the obligor. If the creditor does not take
        possession of the property within 20 days after tender by the obligor, ownership of the
22       property vests in the obligor without obligation on his part to pay for it. The procedures
        prescribed by this subsection shall apply except when otherwise ordered by a court.

23

24       12 C.F.R. § 226.23(d) address rescission effects and provides:

25            (2) Within 20 calendar days after receipt of a notice of rescission, the creditor
        shall return any money or property that has been given to anyone in connection with the
26       transaction and shall take any action necessary to reflect the termination of the security
        interest.

27

28            (3) If the creditor has delivered any money or property, the consumer may retain

6

1  possession until the creditor has met its obligation under paragraph (d)(2) of this section.
2  When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may
3  be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take
4  possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.  (Bold added.)
5

6       Neither TILA nor its implementing Regulation Z (" Reg. Z"), 12 C.F.R. §§ 226, et seq.,

7  "'establishes that a borrower's mere assertion of the right of rescission has the automatic effect of

8  voiding the contract.'"  *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting

9  *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).  The Ninth Circuit

10 Court of Appeals, relying on *Large*, explained:

11       Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the
12       particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such
13       decision is made the [borrowers] have only advanced a claim seeking rescission."

14 *Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

15       A rescission notice is not automatic "without regard to whether the law permits [borrower] to

16 rescind on the grounds asserted."  *See Yamamoto*, 329 F.3d at 1172.   Entertaining rescission

17 automatically "makes no sense . . . when the lender contests the ground upon which the borrower

18 rescinds."  *Yamamoto*, 329 F.3d at 1172.  "In these circumstances, it cannot be that the security interest

19 vanishes immediately upon the giving of notice.  Otherwise, a borrower could get out from under a

20 secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed

21 any."  *Yamamoto*, 329 F.3d at 1172 (italics in original).

22       Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest

23 and return of the money within twenty days of the notice of rescission, we believe this assumes that the

24 notice of rescission was proper in the first place."  *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007).

25 A "court may impose conditions on rescission that assure that the borrower meets her obligations once

26 the creditor has performed its obligations."  *Yamamoto*, 329 F.3d at 1173.  The Ninth Circuit has

27 explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may

28 require borrowers to prove ability to repay loan proceeds:

1

2

3

4

5

6

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

7   *Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that

8   borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial

9   judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy

10  of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.

11  1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds

12  given the lender's non-egregious TILA violations and equities heavily favoring the lender).[3]

13  Countrywide correctly contests Mr. Rendon's attempt to rescind. The complaint does not address

14  conditions precedent to permit rescission. Mr. Rendon's complaint is not a timely, valid rescission

15  notice. The complaint's silence on Mr. Rendon's tender of the rescission balance is construed as his

16  concession of inability to do so. "Clearly it was not the intent of Congress to reduce the mortgage

17  company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without

18  interest." *American Mortgage*, 486 F.3d at 820-821. Without Mr. Rendon's meaningful tender, TILA

19  rescission is an empty remedy, not capable of being granted. The absence of a sufficiently alleged notice

20  of rescission and tender of loan proceeds dooms Mr. Rendon's TILA rescission attempt to warrant its

21  dismissal.

22  / / /

23

24  [3]   The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

25

26  > Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.

27  *Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

28

8

1                                            **TILA Damages**

2             The complaint's first claim appears to seek TILA damages.

3                                        *Limitations Period*

4             Countrywide argues that a TILA damages claim is barred by the one-year limitations period.

5             A TILA damages claims is subject to 15 U.S.C. § 1640(e), which provides that an action for a

6 TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA

7 requires that any claim based on an alleged failure to make material disclosures be brought within one

8 year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d

9 1176, 1183 (D. Or. 2005). The limitations period runs from the date of a transaction's consummation

10 which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v.*

11 *Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). The Ninth

12 Circuit Court of Appeals noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

13
14                  The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day
15                  the loan papers were signed.

16             Mr. Rendon consummated the first loan on October 5, 2006 and the refinanced second loan on

17 February 22, 2007. Mr. Rendon filed his complaint on May 4, 2009, more than two years after his last

18 loan transaction to render his TILA damages claim time barred.

19                     *Failure To Identify Withheld Material Disclosures*

20             Countrywide faults the TILA claim's failure to identify withheld "material disclosures."

21 Countrywide notes that the only "material disclosures" which trigger a TILA violation are disclosures

22 of the annual percentage rate, finance charge, amount financed, total of payments, payment schedule and

23 three-day right to rescind certain real estate-secured loans. *See* 15 U.S.C. §§ 1638(a)(2)-(6), (9), 1640(a)

24 (hanging paragraph); 12 C.F.R. § 226.23(a)(3) & n. 48.

25             "The mere recitation of statutory language, absent supporting allegations, is not sufficient to state

26 a claim" under TILA to warrant dismissal of such a pled claim. *Justice v. Countrywide Homes Loans,*

27 *Inc.*, 2006 WL 141746, at *2 (E.D. Tenn. 2006).

28             The complaint points to nothing to support a withheld material disclosure. The TILA claim

references mere refusal "to validate or otherwise make full accounting and the required disclosures as to the true finance charges and fees."  The TILA claim fails in the absence of alleged facts of a TILA violation arising from failure to make material disclosures.

## RESPA Claim

The complaint's second claim appears to attempt to allege violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq.  The RESPA claim alleges that Countrywide "placed loans for the purpose of unlawfully increasing or otherwise obtaining yield spread fees and sums in excess of what would have been lawfully earned."  The RESPA claim further alleges that Countrywide is a servicer under RESPA and violated 26 U.S.C. § 2605(b) "in that the servicing contract or duties there under [sic] were transferred or hypthecated without the required notice."

### *No Mortgage Broker*

Countrywide characterizes the RESPA claim's allegations regarding yield spread premiums as making "no sense" in the absence of allegations of a mortgage broker's involvement.

"A yield spread premium, or 'YSP,' is a lump sum paid by a lender to a broker at closing when the loan originated by the broker bears an above-par interest rate."  *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1007 (9th Cir. 2002).

In *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1320-1321 (11th Cir. 2008), the Eleventh Circuit Court of Appeals explained yield spread premiums:

> The term "Yield Spread Premium" is used in the mortgage lending industry to refer to a type of payment from a lender to a mortgage broker paid in the context of brokered loan transactions. The premium is a form of compensation that a mortgage broker, acting as the intermediary, receives from the original lender for selling an interest rate to a borrower that is above the lender's par rate for which the borrower qualifies. The borrower accepts this higher rate on the loan in return for paying the broker a reduced origination fee or no fee at all. Essentially, it is a tool by which a borrower may spread the origination fee over the life of the loan.

The California Court of Appeal has explained that "YSP's are widespread and commonly used as a method to compensate mortgage brokers for services provided to borrowers and the lender . . .[and] are accepted vehicles for lenders to compensate mortgage brokers for services rendered in the closing transaction."  *Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal.App.4th 1134, 1149, 135 Cal.Rtpr.2d 796 (2003).

1   A yield spread premium violates RESPA when it is paid to a mortgage broker who provides no

2   good or services in connection with the loan transaction or when the yield spread premium is

3   unreasonably high in relation to the goods and services provided by the mortgage broker.  *See Lane v.*

4   *Residential Funding Corp.*, 323 F.3d 739, 743 (9th Cir. 2003); *Bjustrom v. Trust One Mortg. Corp.*, 322

5   F.3d 1201, 1206-1207 (9th Cir. 2003).

6   The complaint identifies no mortgage broker.  The complaint lacks sufficient allegations to

7   support the RESPA claim to warrant its dismissal.

8   ### *Limitations Defense*

9   Moreover, the RESPA claim fails victim to a limitations defense.  A purported RESPA claim

10  is susceptible to the one-year limitations period of 12 U.S.C. § 2614(a).  The "primary ill" which RESPA

11  seeks to remedy is "the potential for 'unnecessarily high settlement charges' caused by kickbacks, fee-

12  splitting, and other practices that suppress price competition for settlement services.  This ill occurs, if

13  at all, when the plaintiff pays for the service, typically at the closing." *Snow v. First American Title Ins.*

14  *Co.*, 332 F.3d 356, 359-360 (5th Cir. 2003) (quoting 12 U.S.C. §2601(a)).

15  Mr. Rendon filed this action more than a year after the closing of is last refinanced second loan

16  to render the RESPA claim untimely.

17  ### *Servicing Transfer*

18  Countrywide faults the RESPA claim's absence of facts to support a 12 U.S.C. § 2605(b)

19  violation arising from transfer of the service of Mr. Rendon's loan without required notice.  Countrywide

20  points to its notice of default to establish that it continues to service Mr. Rendon's loan.  The California

21  Civil Code section 2923.5 declaration is on Countrywide's letterhead and signed by one of its loss

22  mitigation review specialists.  The notice of default directs Mr. Rendon to contact the first DOT's

23  beneficiary "C/O Countrywide Home Loans, Inc" for information or to arrange payments.  Mr. Rendon's

24  loan and default documents defy that his loan was transferred to subject the RESPA claim to dismissal.

25  ### **HOEPA Claim**

26  The complaint's third claim appears to attempt to allege a violation of the Home Ownership and

27  Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602(aa), 1610, 1639, and 1640.  The HOEPA claim

28  alleges a HOEPA violation in that Mr. Rendon's loan "was placed and administered and otherwise

1  utilized without regard to Plaintiff [sic] income or cash flow and with the intention of inducing a

2  default."

3                                    ***Absence Of HOEPA Violation***

4       Countrywide challenges the HOEPA claim's failure to identify a loan subject to HOEPA.

5  Countrywide notes that HOEPA applies when a loan's annual percentage rate at consummation exceeds

6  by more than 10 percent the applicable yield on treasury securities, or when the total points and fees

7  payable by the consumer exceed eight percent of the "total loan amount," or $400, whichever is greater.

8  15 U.S.C. § 1602(aa)(1), (3); 12 C.F.R. § 226.32(a)(1).  A plaintiff "must allege facts supporting a

9  conclusion that HOEPA applies to the Loan, under the requirements of [15 U.S.C.] § 1602(aa)."

10  *Enriquez v. J.P. Morgan Chase Bank, N.A.*, 2009 WL 160245, at *5 (D. Nev. 2009); *see Marks v.*

11  *Chicone*, 2007 WL 160992, at *8 (N.D. Cal. 2007) (dismissing HOEPA claim where " plaintiff has

12  failed to allege facts sufficient to establish that the subject loan was a high-risk loan subject to

13  HOEPA"); *Justice v. Countrywide Home Loans, Inc.*, 2006 WL 141746, at *2 (E.D. Tenn. 2006)

14  (dismissing HOEPA claim in that "the bare incantation of statutory terms, without corresponding

15  allegations to support recovery, does not state a claim").

16       The HOEPA claim fails in absence of allegations that Mr. Rendon's loan rate or fees exceeded

17  the threshold in invoke HOEPA.  The HOEPA claim's mere allegation of a HOEPA violation is

18  insufficient to warrant dismissal of the HOEPA claim.

19                                       ***Limitations Defense***

20       The HOEPA claim's futility is further illustrated by the applicable one-year limitations period.

21  "HOEPA is an amendment of TILA, and therefore is governed by the same remedial scheme and statutes

22  of limitations as TILA." *Kemezis v. Matthew*, 2008 WL 2468377, at *3 (E.D. Pa. 2008).  Mr. Rendon's

23  HOEPA damages claim is barred by the one-year limitations of 15 U.S.C. § 1640(e) in that his latest

24  loan closed more than a year before he filed this action.

25       The HOEPA claim's attempt to allege delayed discovery fails to resurrect the claim.  The

26  HOEPA claim alleges that Mr. Rendon "became aware of this upon discovery of Defendants [sic] intent

27  to wrongfully foreclose and sell his property."  However, Mr. Rendon signed his loan documents and

28  was aware of his interest rates in 2006 and 2007.  Mr. Rendon possessed all facts necessary to support

                                                    12

1    a HOEPA claim more than a year before he filed this action.

2    **FDCPA Claim**

3        The complaint's fourth claim appears to seek recovery under the Fair Debt Collection Practices

4    Act ("FDCPA"), 15 U.S.C. § 1692, et seq.  The FDCPA claim identifies Countrywide as a "debt

5    collector" and alleges that Countrywide did not respond to Mr. Rendon's "requested validation" of the

6    "debt."

7        Countrywide notes that it is not a debtor collector subject to FDCPA liability because

8    Countrywide "seeks to collect its own debt."

9        The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts

10   for others.  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *mod. on other grounds*, 761

11   F.2d 237 (5th Cir. 1985).  The FDCPA defines a debt collector as "any person . . . who regularly collects

12   or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. §

13   1692a(6).  A "debt collector" does not include a person who collects or attempts to collect a debt "to the

14   extent such activity . . . concerns a debt which was not in default at the time it was obtained by such

15   person." 15 U.S.C. 1962a(6)(F).  "The legislative history of section 1692a(6) indicates conclusively that

16   a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee

17   of a debt, as long as the debt was not in default at the time it was assigned." *Perry*, 756 F.2d at 1208.

18       Moreover, "foreclosing on the property pursuant to a deed of trust is not the collection of a debt

19   within the meaning of the FDCPA." *Hulse v. Ocwen Federal Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D.

20   Or. 2002).  As the fellow district court in *Hulse*, 195 F.Supp.2d at 1204, explained:

21           Foreclosing on a trust deed is distinct from the collection of the obligation to pay
         money.  The FDCPA is intended to curtail objectionable acts occurring in the process of
22       collecting funds from a debtor.  But, foreclosing on a trust deed is an entirely different
         path.  Payment of funds is not the object of the foreclosure action.  Rather, the lender is
23       foreclosing its interest in the property.

24           . . . Foreclosure by the trustee is not the enforcement of the obligation because it
         is not an attempt to collect funds from the debtor.

25

26       Countrywide originated only the first loan to avoid exposure to the FDCPA claim and to warrant

27   its dismissal.

28   / / /

13

### Breach Of Fiduciary Duty

The complaint's fifth claim alleges that Countrywide "acted in a fiduciary relationship" and breached fiduciary duties owed to Mr. Rendon in that Countrywide "placed and negotiated loans without due care to the best interests of Plaintiff or for the protection of his rights."

Countrywide faults the claim as a matter of law in the absence of a fiduciary relationship between lender and borrower.

"[T]o plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action." *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101, 3 Cal.Rptr.2d 236 (1991).

"The relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1093, n. 1, 283 Cal.Rptr. 53 (1991) (citing *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476-478, 261 Cal.Rptr. 735 (1989)). A commercial lender is entitled to pursue its own economic interests in a loan transaction. *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53(citing *Kruse v. Bank of America,* 202 Cal.App.3d 38, 67, 248 Cal.Rptr. 217 (1988)). Absent "special circumstances" a loan transaction is "at arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Management Corp. v. Superior Court*, 145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006) ("the bank is in no sense a true fiduciary"). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53.

The breach of fiduciary duty claim fails to warrant its dismissal. The complaint lacks necessary allegations of Countrywide and Mr. Rendon's special relationship to create fiduciary duties. The lender-borrower relationship does not impose fiduciary duties on Countrywide in this case, especially given the complaint's conclusory allegations.

### Breach Of Implied Covenant Of Good Faith And Fair Dealing

The complaint's sixth claim alleges the existence of an implied covenant of good faith and fair dealing to require Countrywide "to safeguard, protect, or otherwise care for the assets and rights of

1  Plaintiff."  The claim alleges a breach of the implied covenant with "commencement of foreclosure

2  proceedings . . . without the production of documents demonstrating the lawful rights for the

3  foreclosure."

4      Countrywide construes the claim "to imply an extra-contractual requirement" to produce Mr.

5  Rendon's promissory note.

6      "There is an implied covenant of good faith and fair dealing in every contract that neither party

7  will do anything which will injure the right of the other to receive the benefits of the agreement."

8  *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000)

9  (quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)).  "The

10  prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the

11  existence of a contractual relationship between the parties, since the covenant is an implied term in the

12  contract."  *Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 49, 275 Cal.Rptr. 17 (1990).

13  "Without a contractual relationship, [plaintiffs] cannot state a cause of action for breach of the implied

14  covenant."  *Smith*, 225 Cal.App.3d at 49, 275 Cal.Rptr. 17.

15      The "implied covenant of good faith and fair dealing is limited to assuring compliance with the

16  express terms of the contract, and cannot be extended to create obligations not contemplated by the

17  contract."  *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d

18  233 (2004) (citation omitted.)  "[T]he implied covenant will only be recognized to further the contract's

19  purpose; it will not be read into a contract to prohibit a party from doing that which is expressly

20  permitted by the agreement itself."  *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107,

21  1120, 76 Cal.Rptr.3d 585 (2008).  "The covenant 'cannot impose substantive duties or limits on the

22  contracting parties beyond those incorporated in the specific terms of their agreement.'"  *Agosta v. Astor*,

23  120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal.4th 317,

24  349-350, 100 Cal.Rptr.2d 352 (2000)).

25      Countrywide points to the first DOT's provision to initiate foreclosure:

26  If the Lender invokes the power of sale, Lender shall execute or cause Trustee to execute
    a written notice of the occurrence of an event of default and of Lender's election to cause
27  the Property to be sold.  Trustee shall cause this notice to be recorded in each county in
    which any part of the Property is located.  Lender or Trustee shall mail copies of the
28  notice as prescribed by Applicable Law to Borrower and to the other persons prescribed

1    by Applicable Law.  Trustee shall give public notice of sale to the persons and in the
2    manner prescribed by Applicable Law.  After the time required by Applicable Law,
     Trustee, without demand on Borrower, shall sell the Property at public auction to the
3    highest bidder at the time and place under the terms designated in the notice of sale in
     one or more parcels and in any order the trustee determines.

4         No implied covenant imposes on Countrywide a requirement to produce documents to

5    demonstrate lawful right to initiate foreclosure.  The complaint lacks an alleged breach to invoke the

6    implied covenant of good faith and fair dealing.

7         Moreover, even in the absence of a stated implied covenant claim, no implied covenant tort is

8    available to Mr. Rendon.  "Generally, no cause of action for the tortious breach of the implied covenant

9    of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary

10   characteristics.'" *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (applying

11   California law).  "Moreover, even if there were a contractual relationship between the parties, [plaintiffs]

12   have pled no facts establishing a 'special relationship' between them which could justify extending tort

13   liability for bad faith to the present context."  *Smith*, 225 Cal.App.3d at 49, 275 Cal.Rptr. 17.

14        The "implied covenant tort is not available to parties of an ordinary commercial transaction

15   where the parties deal at arms' length."  *Pension Trust Fund*, 307 F.3d at 955.  California courts do not

16   invoke a special relationship between a lender and borrower.  *See Kim v. Sumitomo Bank*, 17

17   Cal.App.4th 974, 979, 21 Cal.Rptr.2d 834 (1993) ("the relationship of a bank-commercial borrower does

18   not constitute a special relationship for the purposes of the covenant of good faith and fair dealing");

19   *Mitsui Manufacturers Bank v. Superior Court*, 212 Cal.App.3d 726, 729, 260 Cal.Rptr. 793 (1989)

20   (borrower precluded to assert tortious breach of implied covenant of good faith and fair dealing claim

21   against lender).  As discussed above, a lender generally owes no fiduciary duty to a borrower unless "it

22   excessively controls or dominates the borrower."  *Pension Trust Fund*, 307 F.3d at 955.

23        Countrywide's first loan to Mr. Rendon was a typical home mortgage to create nothing more than

24   a ordinary lender-borrower relationship.  No special relationship arises between Countrywide and Mr.

25   Rendon.  The complaint makes no attempt to allege such a special relationship with meaningful facts.

26   The breach of implied covenant of good faith and fair dealing claim fails in absence of allegations of a

27   sufficient contractual or special relationship between Countrywide and Mr. Rendon.

28   / / /

                                                   16

**<u>Injunctive Relief</u>**

The complaint's seventh claim "seeks a determination as to the legal status of the parties to the Adjustable Rate Note and the Deed of Trust." The claim alleges that Countrywide "should be required to provide the original note and all subsequent notes with appropriate endorsements thereon so the court may determine under California Law, who owns the property."

Countrywide relies on the absence of a requirement to produce Mr. Rendon's original note or to identify who possesses it.

"If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440, 129 Cal.Rptr.2d 436 (2003). The California Court of Appeal has explained non-judicial foreclosure under California Civil Code sections 2924-2924l:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien*, 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assocs. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("The statutory provisions regulating the nonjudicial foreclosure of deeds of trust are contained in [California Civil Code] sections 2924-2924[l]. These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

"Under Civil Code section 2924, no party needs to physically possess the promissory note." *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, §

17

1  2924(a)(1)). Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and

2  election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777. An "allegation that

3  the trustee did not have the original note or had not received it is insufficient to render the foreclosure

4  proceeding invalid." *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

5       California Civil Code sections 294-294l do not condition initiation of non-judicial foreclosure

6  on physical possession of the underlying promissory note. The statutes do not impose a duty to discover

7  who possesses the original promissory note. Here, the first DOT trustee, as authorized, recorded and

8  served the default notice. The complaint alleges no grounds for requested injunctive relief to warrant

9  the claim's dismissal.

10                                **Declaratory Relief**

11      The complaint's eighth claim alleges that a dispute has arisen "as to duties and obligations of the

12  respective parties with regard to the loan and foreclosure" to require a declaration of "the actual status

13  and validity of the loan" and "foreclosure proceedings."

14      Countrywide argues that the declaratory relief claim is "derivative" of Mr. Rendon's other claims

15  and fails with them.

16      The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

17            In a case of actual controversy within its jurisdiction . . . any court of the United
       States, upon the filing of an appropriate pleading, may declare the rights and other legal
18      relations of any interested party seeking such declaration, whether or not further relief
       is or could be sought. Any such declaration shall have the force and effect of a final
19      judgment or decree and shall be reviewable as such.

20  28 U.S.C. §2201(a).

21      The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,

22  300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937). "A declaratory judgment is not a theory of recovery."

23  *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994). A DJA action

24  requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction."

25  *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143-144 (9th Cir. 1994).

26      As to a controversy to invoke declaratory relief, the question is whether there is a "substantial

27  controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

28  the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

273, 61 S.Ct. 510, 512 (1941).  The United States Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

Mr. Rendon attempts to manufacture a declaratory relief claim on grounds that the parties differ at to validity of his first loan and non-judicial foreclosure proceedings.  The failure of Mr. Rendon's claims demonstrates the absence of an actual controversy subject to declaratory relief.  A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).

The key problem is that the declaratory relief claim fails to articulate an available judicial declaration.  It merely points to a purported controversy regarding foreclosure and trustee's sale of the property.  Without more, there is no actual controversy subject to declaratory relief, especially given the failure of Mr. Rendon's claims.

### Alternative F.R.Civ.P. 12(e) Motion For More Definite Statement

With dismissal of Mr. Rendon's claims, this Court need not address Countrywide's alternative F.R.Civ.P. 12(e) motion for a more definite statement.

### Attempt At Amendment And Malice

Mr. Rendon's claims are insufficiently pled and barred as a matter of law.  Mr. Rendon is unable to cure his claims by allegation of other facts and thus is not granted an attempt to amend.

Moreover, this Court is concerned that Mr. Rendon has brought this action in absence of good faith and that Mr. Rendon exploits the court system solely for delay or to vex defendants.  The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact

or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th

Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.      DISMISSES with prejudice this action against Countrywide;

2.      DIRECTS the clerk to enter judgment in favor of defendant Countrywide Home Loans

and against plaintiff Vidal A. Rendon; and

3.      FURTHER DIRECTS the clerk to close this action.

IT IS SO ORDERED.

**Dated:    September 23, 2009**            /s/ Lawrence J. O'Neill
                                   UNITED STATES DISTRICT JUDGE